No. 25-1964

# United States Court of Appeals
# for the Seventh Circuit

TAEWOO KIM, et al.,
*Plaintiffs-Appellees*,
v.
JUMP TRADING, LLC, et al.,
*Defendants-Appellants*.

Appeal from the United States District Court for the Northern District of Illinois
Case No. 1:23-cv-02921 (Georgia N. Alexakis, District Court Judge)

**DEFENDANTS-APPELLANTS' MOTION TO STAY MANDATE PENDING THE FILING OF A PETITION FOR WRIT OF CERTIORARI**


Roman Martinez
Melissa Arbus Sherry
Uriel Hinberg
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2200

Peter Trombly
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200

Jonathan D. Cogan
*Counsel of Record*
Steven W. Perlstein
Igor Margulyan
KOBRE & KIM LLP
800 Third Avenue
Sixth Floor
New York, NY 10022
(212) 488-1200

*Counsel for Defendants-Appellants*
*Jump Trading, LLC and Jump Crypto Holdings LLC*
*(Additional counsel on inside cover)*


September 1, 2026

Aitan D. Goelman
*Counsel of Record*
R. Miles Clark
Christopher R. MacColl
ZUCKERMAN SPAEDER LLP
2100 L Street, NW
Suite 400
Washington, DC 20037
(212) 778-1800

*Counsel for Defendant-Appellant Kanav Kariya*

Paul M. Krieger
*Counsel of Record*
Jonathan F. Bolz
KKL LLP
350 Fifth Avenue
Suite 7710
New York, NY 10118
(212) 390-9550

*Counsel for Defendant-Appellant William DiSomma*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .......... ii

RULE 41(d)(1) STATEMENT .......... 1

INTRODUCTION .......... 1

ARGUMENT .......... 5

I. DEFENDANTS' PETITION FOR A WRIT OF CERTIORARI WILL PRESENT TWO SUBSTANTIAL QUESTIONS .......... 5

A. There Is A Substantial Question As To Whether An Arbitrator Must Decide Questions Of Nonsignatory Enforcement .......... 6

B. There Is A Substantial Question As To Whether A Uniform Federal Common-Law Standard Should Apply To Nonsignatory Enforcement Of An Agreement Governed By Chapter 2 Of The FAA .......... 11

II. THERE IS GOOD CAUSE FOR A STAY .......... 15

CONCLUSION .......... 18

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*26th Street Hospitality, LLP v. Real Builders, Inc.*,
879 N.W.2d 437 (N.D. 2016) .......... 14

*Aggarao v. MOL Ship Management Co.*,
675 F.3d 355 (4th Cir. 2012) .......... 13

*Arthur Andersen LLP v. Carlisle*,
556 U.S. 624 (2009) .......... 14

*Becker v. Delek US Energy, Inc.*,
39 F.4th 351 (6th Cir. 2022) .......... 2, 7, 10

*Blanton v. Domino's Pizza Franchising LLC*,
962 F.3d 842 (6th Cir. 2020) .......... 10

*Books v. City of Elkhart*,
239 F.3d 826 (7th Cir. 2001) .......... 16

*Boyle v. United Technologies Corp.*,
487 U.S. 500 (1988) .......... 4

*Bradford-Scott Data Corp. v. Physician Computer Network, Inc.*,
128 F.3d 504 (7th Cir. 1997) .......... 4, 16, 17

*Burnett v. National Association of Realtors*,
75 F.4th 975 (8th Cir. 2023) .......... 8

*Casa Arena Blanca LLC v. Rainwater*,
No. 21-2037, 2022 WL 839800 (10th Cir. Mar. 22, 2022) .......... 8

*Chemaly v. Lampert*,
174 F.4th 843 (11th Cir. 2026) .......... 14

*Coinbase, Inc. v. Bielski*,
599 U.S. 736 (2023) .......... 4, 16

*Contec Corp. v. Remote Solution Co.*,
398 F.3d 205 (2d Cir. 2005) .......... 2, 9

*Eckert/Wordell Architects, Inc. v. FJM Properties of Willmar, LLC*,
756 F.3d 1098 (8th Cir. 2014) .......... 8

**Page(s)**

*GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*,
590 U.S. 432 (2020) .......... 12

*Grigson v. Creative Artists Agency L.L.C.*,
210 F.3d 524 (5th Cir. 2000) .......... 13

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019) .......... 3, 9, 10

*Howsam v. Dean Witter Reynolds, Inc.*,
537 U.S. 79 (2002) .......... 3, 9

*InterGen N.V. v. Grina*,
344 F.3d 134 (1st Cir. 2003) .......... 11, 12

*International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*,
206 F.3d 411 (4th Cir. 2000) .......... 11

*Kramer v. Toyota Motor Corp.*,
705 F.3d 1122 (9th Cir. 2013) .......... 2, 8

*Mader v. United St*ates,
654 F.3d 794 (8th Cir. 2011) .......... 8

*Maryland v. King*,
567 U.S. 1301 (2012) .......... 3, 5, 6, 9, 12

*Morales-Posada v. Cultural Care, Inc.*,
141 F.4th 301 (1st Cir. 2025) .......... 8

*MS Dealer Service Corp. v. Franklin*,
177 F.3d 942 (11th Cir. 1999) .......... 13

*Newman v. Plains All American Pipeline, L.P.*,
23 F.4th 393 (5th Cir. 2022) .......... 2, 7

*Newman v. Plains All-American Pipeline, L.P.*,
44 F.4th 251 (5th Cir. 2022) .......... 6

*Olson v. FCA US, LLC*,
172 F.4th 1033 (9th Cir. 2026), *amended and superseded on denial of reh'g*, 176 F.4th 612 (9th Cir. 2026), *and petition for cert. filed*, (U.S. Aug. 19, 2026) (No. 26-228) .......... 2

**Page(s)**

*Outokumpu Stainless USA, LLC v. Coverteam SAS*,
No. 17-10944, 2022 WL 2643936 (11th Cir. July 8, 2022) .............................. 13, 14

*Patterson v. Jump Trading, LLC*,
Nos. 24-670, 24-2489, 2025 WL 215519 (9th Cir. Jan. 16, 2025),
*cert. denied*, 146 S. Ct. 1116 (2025) .......................................................................... 8

*Rent-A-Center West, Inc. v. Jackson*,
561 U.S. 63 (2010) ................................................................................................. 6, 10

*Rogers v. Tug Hill Operating, LLC*,
76 F.4th 279 (4th Cir. 2023)........................................................................................ 6, 7

*Setty v. Shrinivas Sugandhalaya (BNG) LLP*,
3 F.4th 1166 (9th Cir. 2021)..................................................................... 11, 13, 14

*Smith/Enron Cogeneration Limited Partnership v. Smith Cogeneration International, Inc.*,
198 F.3d 88 (2d Cir. 1999)........................................................................... 11, 12

*Town of Vinton v. Indian Harbor Insurance Co.*,
161 F.4th 282 (5th Cir. 2025), *petition for cert. filed* (U.S. June 11, 2026) (No. 25-1383) ...................................................................................... 3, 12

*United States v. Carver*,
260 U.S. 482 (1923) ....................................................................................................... 8

*United States ex rel. Chandler v. Cook County*,
282 F.3d 448 (7th Cir. 2002) .................................................................. 5, 16, 17

*Zirpoli v. Midland Funding, LLC*,
48 F.4th 136 (3d Cir. 2022) ............................................................................................ 9

## STATUTES

9 U.S.C. § 202.......................................................................................................... 15

28 U.S.C. § 1254(1) ...................................................................................................... 1

28 U.S.C. § 2101(c)....................................................................................................... 1

## OTHER AUTHORITIES

Fed. R. App. P. 41(b)..................................................................................................... 1

Fed. R. App. P. 41(b) advisory committee's note to 1994 amendment ........................ 5

**Page(s)**

Fed. R. App. P. 41(d)(1) .......... 2, 4, 5, 15

21 Richard A. Lord, *Williston on Contracts* (4th ed., May 2026 update) .......... 4, 13

Sup. Ct. R. 10(a) .......... 9

Sup. Ct. R. 13.1 .......... 1

Sup. Ct. R. 13.3 .......... 1

## RULE 41(d)(1) STATEMENT

On August 13, 2026, this Court issued its decision in this appeal. ECF No. 66 ("Op."). Absent this motion, the mandate is set to issue on September 3, 2026. *See* Fed. R. App. P. 41(b). Defendants-Appellants Jump Trading, LLC, Jump Crypto Holdings LLC, William DiSomma, and Kanav Kariya ("Defendants") will expeditiously seek Supreme Court review by filing a petition for a writ of certiorari by the end of September 2026, well ahead of the November 12, 2026 deadline. *See* 28 U.S.C. §§ 1254(1), 2101(c); Sup. Ct. R. 13.1, 13.3.

Pursuant to Federal Rule of Appellate Procedure 41(d)(1), Defendants respectfully move to stay the mandate pending the filing and disposition of their petition for certiorari, which, as explained below, will present two substantial questions for the Supreme Court's review. Neither this motion nor the petition for certiorari is being filed for the purpose of delay. Defendants' counsel has informed counsel for Plaintiffs Taewoo Kim, Kashyap Patel, Kerry Woolley, and Ken Worsham ("Plaintiffs") of Defendants' intent to file this motion. Plaintiffs' counsel indicated that Plaintiffs do not consent to a stay of the mandate and will file a brief in opposition.

## INTRODUCTION

This Court's decision affirming the denial of Defendants' motion to compel arbitration deepened acknowledged circuit conflicts on two questions. The first question is who decides—the court or an arbitrator—whether a nonsignatory may compel arbitration under an agreement that delegates arbitrability questions to an arbitrator. The second question is which body of law—state or federal—governs

whether a nonsignatory may invoke equitable estoppel to enforce an agreement under Chapter 2 of the Federal Arbitration Act ("FAA"). The answers to these questions will determine whether numerous cases (including this putative class action) proceed in federal court or arbitral forums, and under what rules. This Court should stay the mandate pending the filing and disposition of a petition for certiorari asking the Supreme Court to resolve these important and recurring issues of federal law.

Each issue presents a "substantial question" for Supreme Court review. Fed. R. App. P. 41(d)(1). On the first question, this Court held that "judges, not an arbitrator, must decide whether [an] agreement to arbitrate arbitrability gives rights to" nonsignatories. Op. 6. This holding splits from Sixth Circuit precedent holding that "the question whether [nonsignatories] can enforce the arbitration agreement [is] for an arbitrator to decide." *Becker v. Delek US Energy, Inc.*, 39 F.4th 351, 355-56 (6th Cir. 2022). And that clear split is just one piece of the open conflict on this threshold question. *Compare, e.g.*, *Newman v. Plains All Am. Pipeline, L.P.*, 23 F.4th 393, 399 (5th Cir. 2022) (treating nonsignatory enforcement as a contract-formation question for courts), *with Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1127-28 (9th Cir. 2013) (arbitrators may resolve nonsignatory-enforcement questions if delegation clause covers third parties), *and Contec Corp. v. Remote Sol. Co.*, 398 F.3d 205, 209 (2d Cir. 2005) (requiring arbitrator to resolve nonsignatory enforcement where nonsignatory makes threshold showing of "sufficient relationship" to signatory). A pending petition for certiorari has already asked the Supreme Court to address this recurring question. *See generally Olson v. FCA US, LLC*, 172 F.4th 1033 (9th Cir.),

*amended and superseded on denial of reh'g*, 176 F.4th 612 (9th Cir. 2026), *and petition for cert. filed*, (U.S. Aug. 19, 2026) (No. 26-228).

Given this confusion, there is a "reasonable probability" that the Supreme Court will grant review and a "fair prospect" it will reverse. *Maryland v. King*, 567 U.S. 1301, 1302 (2012) (Roberts, C.J., in chambers) (citation omitted). As Defendants have argued, reversal reasonably follows from Supreme Court precedent: Whether a nonsignatory defendant can enforce an arbitration agreement is a question of "arbitrability." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). And "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019).

As to the second question, this Court held that "state law controls disputes about estoppel under Chapter 2" of the FAA. Op. 9. Here, too, the circuits are divided. As this Court "recognize[d]," four circuits—the First, Second, Fourth, and Ninth—"have held that federal common law provides the rule of equitable estoppel for agreements governed by Chapter 2," but the Fifth Circuit "holds, to the contrary, that state law applies." *Id.* There is a reasonable probability the Supreme Court will step in to resolve this acknowledged circuit split. As with the first issue, there is already a pending petition for a writ of certiorari on this issue, and this Court's decision deepening the conflict just underscores the need for review. *Town of Vinton v. Indian Harbor Ins. Co.*, 161 F.4th 282, 287-88 (5th Cir. 2025), *petition for cert. filed*, (U.S. June 11, 2026) (No. 25-1383).

If the Court grants review, there is a fair prospect it will reverse. Applying state law to the question of nonsignatory enforcement would severely "'frustrate'" a "uniquely federal interest" in having United States courts apply uniform rules to arbitration agreements governed by Chapter 2. *Boyle v. United Techs. Corp.*, 487 U.S. 500, 506-07 (1988) (citation omitted). And as Defendants have argued, the best understanding of federal common law is that a nonsignatory may compel arbitration "when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." 21 Richard A. Lord, *Williston on Contracts* § 57:19 (4th ed., May 2026 update). Under that rule, Defendants are entitled to arbitrate Plaintiffs' claims premised on an alleged conspiracy between the agreement's other signatory, TFL, and nonsignatory Defendants.

There is also "good cause" to stay the mandate during the pendency of Defendants' petition. Fed. R. App. P. 41(d)(1). This appeal is about "[w]hether the litigation may go forward in the district court." *Bradford-Scott Data Corp. v. Physician Comput. Network, Inc.*, 128 F.3d 504, 505-06 (7th Cir. 1997) (appeal of denial of motion to compel arbitration stays district-court proceedings). But if this Court's mandate issues and the case proceeds, the "benefits of arbitration" will be "irretrievably lost." *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 743 (2023). Defendants intend to file their petition for certiorari by the end of September 2026, which would ensure that if the Supreme Court grants review, the case may be briefed, argued, and

decided by the end of the 2026 Term. A stay of the mandate would thus maintain the status quo and conserve judicial resources without prejudicing Plaintiffs in any real way.

Defendants' motion to stay the mandate should be granted.

## ARGUMENT

Under Federal Rule of Appellate Procedure 41(d), a party may move to stay the mandate pending the filing of a petition for a writ of certiorari with the Supreme Court. To succeed, the movant "must show" (1) "that the petition would present a substantial question" and (2) "that there is good cause for a stay." Fed. R. App. P. 41(d)(1). Defendants readily satisfy both requirements.

### I. DEFENDANTS' PETITION FOR A WRIT OF CERTIORARI WILL PRESENT TWO SUBSTANTIAL QUESTIONS

Defendants' forthcoming petition for a writ of certiorari will present two questions, each of which is a "substantial question" under Rule 41(d)(1). A question is "substantial" when there is "(1) 'a reasonable probability' that [the Supreme Court] will grant certiorari" and "(2) 'a fair prospect' that the Court will then reverse the decision below." *Maryland v. King*, 567 U.S. 1301, 1302 (2012) (Roberts, C.J., in chambers) (citation omitted); *see United States ex rel. Chandler v. Cook County*, 282 F.3d 448, 450 (7th Cir. 2002); Fed. R. App. P. 41(b) advisory committee's note to 1994 amendment (referring to Supreme Court's standard). As to each question presented, there is a straightforward case for certiorari based on a well-developed circuit conflict, and a fair prospect that the Supreme Court will take Defendants' side.

### A. There Is A Substantial Question As To Whether An Arbitrator Must Decide Questions Of Nonsignatory Enforcement

1. "To begin, there is a reasonable probability [the Supreme Court] will grant certiorari" because this Court's decision directly "conflicts with decisions" of other circuits on the question of whether a court or an arbitrator decides whether a nonsignatory can enforce an agreement to arbitrate arbitrability. *King*, 567 U.S. at 1302. This conflict is real, as the district court, Judge Jones, and Judge Niemeyer have recognized. A8-9 (acknowledging "inconsistency" among circuits (citation omitted)); *Newman v. Plains All-American Pipeline, L.P.*, 44 F.4th 251, 251, 254 (5th Cir. 2022) (per curiam) (Jones, J., dissenting from denial of en banc rehearing) (explaining that Fifth Circuit is "out-of-step with at least five other circuits"); *Rogers v. Tug Hill Operating, LLC*, 76 F.4th 279, 288-89 (4th Cir. 2023) (contrasting Fourth and Fifth Circuits' approaches with Sixth Circuit precedent).

This Court held that a court, not an arbitrator, "must decide whether [Plaintiffs] … agreed to arbitrate *any* questions" with nonsignatory Defendants. Op. 5. According to this Court, *Rent-A-Center West, Inc. v. Jackson* requires "courts [to] decide not only whether parties have agreed to delegate questions of arbitrability to an arbitrator, but also whether and *by whom* an agreement delegating these questions can be enforced." *Id.* (emphasis added) (citing 561 U.S. 63, 71 (2010)). This Court reasoned that although Plaintiffs "may have agreed to arbitrate … 'claim[s] or controvers[ies] as to arbitrability,'" "a court must decide which third parties can enforce th[at] agreement." *Id.* at 6 (quoting A154).

This holding directly conflicts with the Sixth Circuit's decision in *Becker v. Delek US Energy, Inc.*, 39 F.4th 351 (6th Cir. 2022). There, a nonsignatory plaintiff challenged "the existence of an agreement to arbitrate, and any agreement to arbitrate arbitrability, with" a nonsignatory defendant. *Id.* at 355. Applying *Rent-A-Center*, the Sixth Circuit held that this challenge was a question for the arbitrator, reasoning that "[w]hether a non-signatory can enforce a delegation clause is … a question of enforceability, not existence." *Id.* at 356. And the court found that the plaintiff's argument that the defendant was "a non-signatory to the [arbitration] agreement" was not a "'specific[]'" challenge to the delegation clause's validity that must be decided by a court. *Id.* (citation omitted). Accordingly, *Becker* "le[ft] the question whether [the nonsignatory] can enforce the arbitration agreement for an arbitrator to decide." *Id.* Under the Sixth Circuit's rule, Defendants would be entitled to arbitrate whether they may compel arbitration as nonsignatories.

This conflict by itself warrants Supreme Court review, but the divide does not end there. At one end of the spectrum, some circuits treat nonsignatory enforcement as a "[contract-]formation question that is determined by the courts." *Newman v. Plains All Am. Pipeline, L.P.*, 23 F.4th 393, 399-400 (5th Cir. 2022); *see also Rogers*, 76 F.4th at 288-89 (holding that "*as a precondition* to granting [nonsignatory] the right to enforce any portion of an arbitration clause to which it was not a party, *the district court* was required, when that right was challenged, to" address the issue).

At the other end, the Eighth and Tenth Circuits agree with the Sixth Circuit that when an arbitration agreement contains a valid delegation clause,

nonsignatory-enforcement questions are for the arbitrator.[1] *Eckert/Wordell Architects, Inc. v. FJM Props. of Willmar, LLC*, 756 F.3d 1098, 1100 (8th Cir. 2014) (explaining that nonsignatory enforcement "is a threshold question of arbitrability" that an arbitrator must decide when there is "clear and unmistakable evidence" that the contract "commit[s] questions of arbitrability to an arbitrator"); *Casa Arena Blanca LLC v. Rainwater*, No. 21-2037, 2022 WL 839800, at *5 (10th Cir. Mar. 22, 2022) (holding that once a court identifies "an enforceable delegation clause," nonsignatory-enforcement questions must be "sent … to arbitration").

Between these poles, still other circuits have taken varying positions. The Ninth Circuit recognizes that a delegation clause that expressly covers nonsignatories may delegate nonsignatory enforcement to an arbitrator.[2] *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1127-28 (9th Cir. 2013). And the First, Second, and Third Circuits hold that arbitrators must ultimately resolve colorable claims for nonsignatory enforcement. *Morales-Posada v. Cultural Care, Inc.*, 141 F.4th 301, 310

---

[1] *Burnett v. National Association of Realtors*, 75 F.4th 975, 982-83 (8th Cir. 2023), contradicts the Eighth Circuit's earlier opinion in *Eckert*. But "when faced with conflicting panel opinions, the earliest opinion must be followed." *Mader v. United States*, 654 F.3d 794, 800 (8th Cir. 2011) (en banc).

[2] In an unpublished memorandum disposition, the Ninth Circuit affirmed the denial of Jump Trading, LLC's motion to compel arbitration under the same agreement at issue in this case, and the Supreme Court denied certiorari. *See Patterson v. Jump Trading, LLC*, Nos. 24-670, 24-2489, 2025 WL 215519 (9th Cir. Jan. 16, 2025), *cert. denied*, 146 S. Ct. 1116 (2025). This prior "denial of a writ of certiorari imports no expression of opinion upon the merits of the case." *United States v. Carver*, 260 U.S. 482, 490 (1923). While *Patterson* did not alter the Ninth Circuit's precedent or the overall circuit conflict, this Court's decision deepened the circuit conflict, underscoring the need for certiorari. Accordingly, the Supreme Court may view Defendants' petition in this case as an opportunity to resolve a conflict that will not fade away without the Court's intervention.

(1st Cir. 2025) (recognizing that agreement may "delegate[] to the arbitrator 'decisions about the arbitrability of disputes' so long as a 'prima facie agreement to arbitrate' existed" (citation omitted)); *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 209 (2d Cir. 2005) (holding, after determining that "sufficient relationship existed" between nonsignatory and signatory, that signatory was "compel[led] … to arbitrate the question of arbitrability" with nonsignatory); *Zirpoli v. Midland Funding, LLC*, 48 F.4th 136, 144-45 (3d Cir. 2022) ("challenge to the enforceability of the arbitration agreement" by alleged assignee "must be decided by the arbitrator, not by a court").

In short, because the circuits are in disarray on the question of who decides whether a nonsignatory can compel arbitration when a party has agreed to arbitrate arbitrability, Supreme Court review is reasonably probable. *King*, 567 U.S. at 1302; Sup. Ct. R. 10(a).

2. Defendants' petition also satisfies the second prong of the "substantial question" analysis because there is a fair prospect of reversal if the Supreme Court grants certiorari.

As the Supreme Court has recognized, when an arbitration agreement contains a provision delegating threshold "arbitrability" questions to the arbitrator, "a court possesses no power to decide the arbitrability issue" and must send the dispute to the arbitrator to resolve. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019). Such "arbitrability" questions include "whether [an] arbitration contract b[inds] parties who did not sign the agreement" as a question of "'arbitrability.'" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (citation omitted).

Where, as here, a delegation clause commits threshold "arbitrability" questions to the arbitrator, any dispute over whether a nonsignatory may enforce the agreement is for the arbitrator to resolve.

This Court suggested that "before deciding whether equitable estoppel is a question of arbitrability," a court must address whether a signatory plaintiff "agreed to arbitrate *any* questions" with Defendants. Op. 5. The Supreme Court may well disagree. As the Sixth Circuit has correctly explained, this kind of nonsignatory-enforcement dispute does not concern contractual "existence"—a contract-formation question reserved for courts. *Becker*, 39 F.4th at 356. Nor is it a challenge to the delegation clause's validity based on "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Rent-A-Center*, 561 U.S. at 68 (citation omitted). When a plaintiff has agreed to arbitrate arbitrability, the question whether he must arbitrate against nonsignatory defendants is for the arbitrator.

This Court's concern that, under Defendants' view, "anyone could benefit from a stranger's agreement to arbitrate" arbitrability does not undermine the fair prospect of reversal. Op. 6. The Supreme Court itself "rejected a nearly identical argument" about the potential for "'frivolous motions to compel arbitration.'" *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 851 (6th Cir. 2020) (quoting *Henry Schein*, 586 U.S. at 71). And even if the Supreme Court holds that nonsignatory defendants must make a threshold showing before a court enforces a delegation provision as to them—as the First, Second, and Third Circuits require—Defendants can make that showing here. After all, Plaintiffs' case is premised entirely on the

theory that Defendants "secretly schemed" with a signatory. A85-87, 103, 118, 133, 135-39 (¶¶ 1, 4, 74, 103, 156, 163, 170, 175-77).

In sum, should the Supreme Court grant certiorari, there is a fair prospect that it will agree that an arbitrator, not a court, must resolve questions of nonsignatory enforcement when a party has agreed to arbitrate arbitrability.

### B. There Is A Substantial Question As To Whether A Uniform Federal Common-Law Standard Should Apply To Nonsignatory Enforcement Of An Agreement Governed By Chapter 2 Of The FAA

Defendants' petition for a writ of certiorari will also present a second "substantial question": whether a uniform federal common law allows a nonsignatory defendant to enforce an arbitration agreement subject to Chapter 2 of the FAA (also known as the New York Convention) when the plaintiff alleges concerted misconduct by the nonsignatory defendant and a signatory.

1. There is a "reasonable probability" that the Supreme Court will grant certiorari to resolve this question. As this Court acknowledged, its conclusion that state law supplies the equitable estoppel standard deepened a preexisting split on whether state law or federal common law supplies the standard. Op. 9-10. As the Court explained, the First, Second, Fourth, and Ninth Circuits hold "that federal common law provides the rule of equitable estoppel for agreements governed by [the New York Convention]." *Id.* (citing *Setty v. Shrinivas Sugandhalaya (BNG) LLP*, 3 F.4th 1166 (9th Cir. 2021); *InterGen N.V. v. Grina*, 344 F.3d 134, 143-44 (1st Cir. 2003); *Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 96 (2d Cir. 1999); *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen*

*GMBH*, 206 F.3d 411, 417 n.4 (4th Cir. 2000)). The Fifth Circuit, by contrast, holds that "state law applies." *Id.* (citing *Town of Vinton v. Indian Harbor Ins. Co.*, 161 F.4th 282, 287-88 (5th Cir. 2025)). As with the first question, this undeniable split on an important question of federal law makes it reasonably probable that the Supreme Court will grant certiorari.

2. If the Supreme Court grants certiorari, there is also a "fair prospect" that it will adopt the majority view and reverse. *King*, 567 U.S. at 1302 (citation omitted). The Supreme Court has expressly reserved decision on the question of "which body of law governs th[e] determination" of whether a nonsignatory may enforce an arbitration agreement subject to the Convention. *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 590 U.S. 432, 445 (2020). There is good reason to believe that when the Supreme Court addresses this open question, it will opt for a uniform rule of federal common law.

The New York Convention implicates unique uniformity concerns that warrant a federal common law rule that is not subject to state-by-state variation. The Second Circuit, for example, held that applying state law would "introduce a degree of parochialism and uncertainty into international arbitration that would subvert the goal of simplifying and unifying international arbitration law." *Smith/Enron Cogeneration Ltd.*, 198 F.3d at 96. The First Circuit likewise concluded that "[a]pplying varying state standards in cases falling within the Convention's ambit would be in tension with the elemental purpose of chapter 2." *InterGen N.V.*, 344 F.3d at 143. And the Ninth Circuit recognized that "[t]he New York Convention and

its implementing legislation emphasize the need for uniformity in the application of international arbitration agreements." *Setty*, 3 F.4th at 1168.

These courts' emphasis on the need for uniform enforcement of New York Convention-governed agreements in the United States makes good sense. A regime in which each state imposes its own test "would create an unmanageable tangle of arbitration law in the United States, lead to forum shopping, and frustrate the uniform standards the New York Convention and Chapter 2 of the FAA were enacted to create." *Outokumpu Stainless USA, LLC v. Coverteam SAS*, No. 17-10944, 2022 WL 2643936, at *6 (11th Cir. July 8, 2022) (Tjoflat, J., specially concurring). These conflicting circuit decisions provide compelling reasons to reject this Court's view that there is no "need for uniformity" on the question of when a nonsignatory can enforce an agreement governed by Chapter 2. Op. 9-10.

Under a uniform federal common law rule, Defendants would be entitled to arbitrate. As courts and a leading treatise have recognized, the federal common law rule permits a nonsignatory defendant to compel arbitration where, as here, *supra* at 10-11, a plaintiff alleges concerted misconduct by a signatory and a nonsignatory defendant. *See, e.g.*, *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 373 (4th Cir. 2012); *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999); 21 Richard A. Lord, *Williston on Contracts* § 57:19 (4th ed., May 2026 update). This rule prevents a plaintiff from "avoid[ing]" his arbitration "agreement by bringing the action against a non-signatory charged with acting in concert with [a] non-defendant signatory." *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 528 (5th Cir.

2000). And contrary to this Court's concern that this rule is not "ordinary," Op. 11, many state courts have adopted this rule as a matter of state contract law, *see 26th St. Hosp., LLP v. Real Builders, Inc.*, 879 N.W.2d 437, 447-48 (N.D. 2016) (adopting rule and collecting cases).

This Court's remaining doubts about Defendants' arguments do not dim the prospect that the Supreme Court will reverse. This Court read *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009), and *GE Energy* together to require application of state-law equitable-estoppel principles even to agreements governed by Chapter 2 of the FAA. Op. 8-9. Those decisions, however, are reasonably susceptible to a different reading. By its terms, *Arthur Andersen*'s state-law holding is limited to Chapter 1 of the FAA, 556 U.S. at 630-31, and *GE Energy* declined to resolve whether federal or state law controls nonsignatory-enforcement disputes. The Ninth Circuit recognized precisely this point in *Setty*, decided after both *Arthur Andersen* and *GE Energy*. 3 F.4th at 1168; *see also Outokumpu*, 2022 WL 2643936, at *6 (Tjoflat, J., specially concurring) (explaining on remand from the Supreme Court in *GE Energy* that "all signs point to the conclusion that we must apply federal common law in determining whether equitable estoppel applies in New York Convention cases"); *Chemaly v. Lampert*, 174 F.4th 843, 856 (11th Cir. 2026) (assuming, without deciding, that federal common law applies). There is thus a fair prospect that the Supreme Court may reach a different conclusion on this issue.

This Court also expressed doubt "that Chapter 2 governs the dispute" because the parties to this dispute are both citizens of the United States, and allowing

Defendants "to benefit from an arbitration agreement's status under Chapter 2 before deciding whether it is subject to that agreement at all … would put the cart before the horse." Op. 8. But the Supreme Court may see things differently. The question of whether the Convention applies turns on whether the relevant "arbitration agreement … aris[es] out of a legal relationship" involving at least one non-U.S. citizen—a standard that is satisfied here. 9 U.S.C. § 202. Applying this plain statutory language—which concerns the nationalities of the parties to the arbitration agreement and not of the litigants—would avoid a result in which the governing law would differ depending on whether a signatory or a nonsignatory seeks to enforce the same contract.

In light of all this, there is a "fair prospect" that should the Supreme Court grant certiorari, it would hold that federal common law applies and that Defendants are entitled to arbitrate Plaintiffs' claims.

## II. THERE IS GOOD CAUSE FOR A STAY

There is also "good cause for a stay." Fed. R. App. P. 41(d)(1). Without a stay of the mandate, Defendants will be required to bear the cost of defending against a putative class action before a federal district court even though Plaintiffs agreed to resolve their Commodity Exchange Act and unjust enrichment claims through individual arbitration.

Indeed, Plaintiffs have previewed the burdens that litigation would entail. In a joint status report, Plaintiffs stated that after this Court's mandate issues, they will seek leave to amend the operative complaint and to start discovery. D. Ct. Dkt. No. 125 at 2-3. And because Plaintiffs seek to represent a class, it is virtually certain that

the scope of any such discovery will extend well beyond the named plaintiffs' individual claims to encompass class-wide inquiries.

This harm cannot be undone. If "pre-trial … proceedings" were to continue in the district court, "many of the asserted benefits of arbitration (efficiency, less expense, less intrusive discovery, and the like) would be irretrievably lost—even if [the Supreme Court] later concluded that the case actually had belonged in arbitration all along." *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 743 (2023). As this Court has explained, "[c]ontinuation of proceedings in the district court largely defeats the point of [an] appeal" intended to determine "[w]hether the litigation may go forward in the district court." *Bradford-Scott Data Corp. v. Physician Comput. Network, Inc.*, 128 F.3d 504, 505-06 (7th Cir. 1997). Allowing district court proceedings to continue could force the parties to "combin[e] the costs of litigation and arbitration" if the Supreme Court later agrees with Defendants. *Id.* at 506. That Defendants "ought not be put to the further expense of preparing for trial until the question of" whether this case should be arbitrated "is decided definitively" easily demonstrates that a stay is necessary to prevent irreparable injury. *Chandler*, 282 F.3d at 451; *see also Books v. City of Elkhart*, 239 F.3d 826, 829 (7th Cir. 2001) (Ripple, J., in chambers) (recognizing that, even in a case with "weak" prospects "for a grant of certiorari," "the equities of the situation" warranted staying the mandate).

Considerations of judicial economy also weigh in favor of staying the mandate. As the district court recognized after Defendants noticed this appeal, the "appropriate course of action under Coinbase is to stay the entire litigation pending the results of

defendants' appeal." D. Ct. Dkt. No. 108. The result of Defendants' challenge to the district court's denial of Defendants' motion to compel arbitration is yet to be determined. If this case goes forward in the district court while Defendants' petition for certiorari is pending, that will "create[] a risk of inconsistent handling of the case by two tribunals." *Bradford-Scott*, 128 F.3d at 505. The district court should not have to expend resources to resolve dispositive motions or referee discovery disputes in a case that the Supreme Court may ultimately send to arbitration.

Plaintiffs will not be prejudiced by a stay of the mandate. Plaintiffs will sustain "only the prejudice that comes with any delay in a judicial proceeding." *Chandler*, 282 F.3d at 451. This generic objection does not negate the irreparable harm Defendants will suffer from litigating this putative class action in court rather than individualized arbitration. In any event, Defendants intend to expeditiously seek certiorari by the end of September 2026—well before the 90-day filing deadline—so that the case could be argued and decided in the forthcoming 2026 Term if certiorari is granted. Should the Supreme Court deny certiorari, the stay would be lifted, and this case could promptly proceed.

* * *

Because there is a reasonable probability the Supreme Court will grant Defendants' certiorari petition on one or both questions presented and a fair prospect of reversal if it does, this Court should stay the mandate to preserve the status quo, prevent irreparable harm to Defendants, and conserve scarce judicial resources.

## CONCLUSION

Defendants' motion to stay the mandate should be granted.

Dated: September 1, 2026

Respectfully submitted,

/s/ Roman Martinez
Roman Martinez
Melissa Arbus Sherry
Uriel Hinberg
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2200

Jonathan D. Cogan
*Counsel of Record*
Steven W. Perlstein
Igor Margulyan
KOBRE & KIM LLP
800 Third Avenue
New York, NY 10022
(212) 488-1200

Peter Trombly
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200

*Counsel for Defendants-Appellants Jump Trading, LLC and Jump Crypto Holdings LLC*

/s/Paul M. Krieger
Paul M. Krieger
*Counsel of Record*
Jonathan F. Bolz
KKL LLP
350 Fifth Avenue
Suite 7710
New York, NY 10118
(212) 390-9550

*Counsel for Defendant-Appellant William DiSomma*

/s/Aitan D. Goelman
Aitan D. Goelman
*Counsel of Record*
R. Miles Clark
Christopher R. MacColl
ZUCKERMAN SPAEDER LLP
2100 L Street, NW
Suite 400
Washington, DC 20037
(212) 778-1800

*Counsel for Defendant-Appellant Kanav Kariya*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this motion complies with the type-volume limitations of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 4,625 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f). I further certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and Seventh Circuit Rule 32(b) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared using a proportionally spaced 12-point font.

Dated: September 1, 2026

*/s/ Roman Martinez*
Roman Martinez

## CERTIFICATE OF SERVICE

I hereby certify that on September 1, 2026, I caused the foregoing Motion to Stay Mandate Pending the Filing of a Petition for Writ of Certiorari to be served by electronic means through the Court's CM/ECF system on counsel for all parties who are registered CM/ECF users.

*/s/ Roman Martinez*
Roman Martinez